### REID et al. v. BOROUGH OF BROOKVILLE, PA., et al.

No. 1183.

District Court, W. D. Pennsylvania.

May 2, 1941.

Theodore Epstein, of Pittsburgh, Pa., for plaintiffs.

Arnold & Chaplin, of Clearfield, Pa., and Vincent R. Smith and Robert Engel, both of Greensburg, Pa., for defendants.

GIBSON, District Judge.

The plaintiffs are members of a cult known as "Jehovah's witnesses", and the defendants are boroughs of the Western District of Pennsylvania and their officers.

The only ground common to the defendant boroughs is that each has in force an ordinance which requires a license from a borough authority to each person selling or distributing merchandise, including books and periodicals, upon the streets or from door to door. The ordinance of the Borough of Monessen differs from the other ordinances in that it is directed against disloyal persons and those who have refused to salute the American flag, and asserts as one of the requirements for a license that the applicant salute the flag. Although joined together as defendants, the cases of the various boroughs were tried separately.

The facts in each case were substantially parallel. Members of "Jehovah's witnesses" had been arrested in the past in each borough, and the officers of the borough have declared their intention to pursue the same policy in the future if the "Witnesses" functioned as in the past without first securing the license contemplated by the ordinance. On behalf of plaintiffs it is claimed that the application of the ordinances to "Jehovah's witnesses" and their activities encroaches upon the civil and constitutional rights of such witnesses. The rights so attacked, they say, are those of freedom of worship, freedom of speech, freedom of press and of assemblage.

Each of "Jehovah's witnesses" asserts that he is an ordained minister. The method of his ordination is not very plain, but the evidence of it is found in a small printed card which bears his name in typewriting at the top and the printed signature of the "Watch Tower Bible & Tract Society, J. F. Rutherford President". This card asserts in part:

"To Whom It May Concern:

"This is to certify that ......, whose signature appears below, is an ordained minister of Jehovah God to preach the gospel of God's kingdom under Christ Jesus and is therefore one of Jehovah's witnesses; that he is sent forth by this Society * * * to preach the gospel of God's kingdom. * * *"

The function of each Witness as such ordained minister is to sell or distribute the periodicals or tracts put forth by the Watch Tower Bible & Tract Society upon the street or by a house-to-house canvass. In this distribution religion as practiced and advocated by organized church bodies is denounced as a "snare and a racket"—this being in accordance with the declarations of the Watch Tower publications. A housewife, called from her cooking breakfast to listen to pointed criticisms of her religion by a persistent book agent, is quite likely to regard the agent as a nuisance, even though the agent sincerely believes that he is but fulfilling his duty to Jehovah by his attempted sale and advocacy. And the ordinary citizen is apt to be indignant and regard a Jehovah's witness as disloyal when the latter refuses to salute the national flag, or to allow his children in school to salute it, even though the Witness may be acting pursuant to a religious scruple.

Practices such as those mentioned have caused ordinances such as those in suit to be enacted, or at least enforced, for the purpose of curbing the activities of Jehovah's witnesses. As to the legality of the enforcement of such ordinances against Je-

hovah's witnesses this court is not left to its uncontrolled judgment. The Supreme Court has recently had before it cases in which the activities of Jehovah's witnesses were under consideration. See Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Schneider v. New Jersey (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352. In each of these cases a Witness was selling Watch Tower publications upon the street and by house-to-house canvass without having obtained the permit prescribed by an ordinance of the municipality for such actions. The court held that the enforcement of the ordinance against Jehovah's witness was invalid in that it infringed upon his right to freedom of speech, of press and of religion granted him by the First and Fourteenth Amendments to the Constitution. The facts in the cases cited are so closely parallel with those of the instant cases that it is unnecessary for this court to do other than refer to the cited cases in support of its finding that plaintiffs are entitled to decrees by which the defendant boroughs and their officers are enjoined from enforcing the ordinances in question against Jehovah's witnesses when engaged in the advocacy of their religious views by the sale of books, periodicals and tracts.

It may be noted, however, that the instant cases differ from those cited in that the latter were appeals from State appellate courts which had passed upon sentences of lower courts, while the plaintiffs herein are seeking injunctions against threatened future enforcement of the ordinances against Jehovah's witnesses, but not upon any prior convictions against them. This difference in situation is of no moment, owing to the continuing nature of the acts of the defendants. Ordinarily a court of equity will not intervene to enjoin procedure under criminal statutes, but will do so to prevent continuing invasion of property or constitutional rights. Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L. Ed. 255; Hague v. C. I. O. et al., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. Appeals from the court of the Burgess of the borough, through the courts of the State to the Supreme Court of the United States, would not furnish prompt and complete relief under the circumstances of the instant cases.

The ordinances of the defendant boroughs have each substantially the requirement, under penalty, that a license must be obtained from a borough officer before periodicals, tracts, etc., may be distributed in the borough, and this requirement, as stated supra, tends to deprive plaintiffs of their constitutional rights. The ordinance of the Borough of Monessen, in addition, requires the applicant to salute the American flag as a requisite to a license. A license not being required, such provision is immaterial. Its inclusion in a hawking ordinance is far from bringing the ordinance within the scope of Minersville School District v. Gobitis, 310 U.S. 586, 594, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375, 127 A.L.R. 1493, opinion by Mr. Justice Frankfurter. The ordinance is not a "general law not aimed at the promotion or restriction of religious beliefs", but quite evidently one having in contemplation Jehovah's witnesses and their beliefs—although doubtless inspired by a sincere, although misdirected, feeling of loyalty.

Let separate decrees be presented in accordance with the foregoing discussion after notice to counsel for the respective defendants.