## GHADIALI v. DELAWARE STATE MEDICAL SOCIETY et al.

### No. 1022.

District Court, D. Delaware.

Jan. 26, 1943.

Plaintiff appeared in pro. per.

James R. Morford, Atty. Gen. of Delaware, for defendant.

BIGGS, Circuit Judge.

The plaintiff has appeared pro se in this proceeding and is the author of the amended complaint. In view of these facts the court will endeavor to construe the pleading and the plaintiff's contentions without regard for technicalities. The plaintiff, a Parsee Zoroastrian by birth, is a naturalized American citizen and a resident of the State of New Jersey. The amended complaint alleges that Delaware State Medical Association (actually the President and Fellows of the Medical Society of Delaware), the Attorney General of Delaware and the other defendants have interfered with his constitutional rights as an American citizen in that they have prevented him and will continue to prevent him from lecturing on the subject of "Spectro-Chrome-Metry". Spectro-Chrome-Metry was described by the plaintiff in his testimony as " * * * the treatment of human disorders by attuned color waves", and he alleges that Spectro-Chrome-Metry is an original science which he developed. He contends that he does not cure or attempt to cure disease, that what he does is to "tonate the imbalance" of the human body by attuned color waves supplied by an appliance called a "Spectro-Chrome".

The plaintiff is the owner of a patent issued in 1925 by the United States Patent Office for a "Color-Wave-Projection Apparatus". The specification states that his invention "relates to a color wave

projection apparatus intended primarily for use in the treatment of diseases by means of color waves emanating from selected portions of the spectrum. * * *" The claims of the patent are for an ordinary projection apparatus. The plaintiff testified that he possessed other patents and copyrights. During 1932 and for some years thereafter he received royalties from this patent through a license issued by him to a company of which he was the directing force and the principal stockholder. In later years, however, apparently because of the insolvency of this company, the plaintiff has received the sum of $10 for each Spectro-Chrome sold. This compensation comes to the plaintiff despite the fact that he allegedly "gives" a Spectro-Chrome to each person who completes his course. The plaintiff claims that any "imbalance" can be "tonated" by the proper use of the Spectro-Chrome and has written a "Spectro-Chrome-Metry Encyclopaedia" which prescribes treatments for most major diseases. These "cures" are claimed to be effected by exposure of the affected part of the body to colored lights emanating from a Westinghouse 1000 watt bulb through the colored glass of the Spectro-Chrome.

The circular which preceded the plaintiff's lectures at the DuPont-Biltmore Hotel in Wilmington, Delaware in October, 1932, stated in part, "Good News for the Sick! Vital Message to the Suffering!! Plug your Health from the Light Socket!!! Free public lectures on the foremost healing system. Spectro-Chrome Metry. The Health Message of Attuned Color Waves. The Science of Automatic Precision. By the Originator, Colonel Dinshah P. Ghadiali, (Honorary) M.D., M.E., D.C., Ph.D., LL.D., etc—Metaphysician and Psychologist." In connection with his use of the letters "M.D.", the plaintiff has testified that he received the honorary degree of medical doctor conferred upon him in Bombay, India, in the year 1899 by an institution known as "Independent Medical College of Chicago, Illinois".

Following the lectures delivered by the plaintiff at the DuPont-Biltmore Hotel, he began to conduct a class in Spectro-Chrome-Metry at Odd Fellows Hall, also in Wilmington. The enrollments were "For the study of Spectro-Chrome Metry, The Science of Automatic Precision, the Measurement and Restoration of the Human Radio-Active and Radio-Emanative Equilibrium (Tonation of Imbalance) by Attuned Color Waves, without the use of Diagnosis, Drugs, Manipulation or Surgery." The applications state the purpose of the plaintiff's students: to "assist the sick"; "to learn if Spectro-Chrome Metry will benefit an injured spine with which I am afflicted"; "personal use with expectation of practice"; "to help myself"; and "interest of my poor health". Each application requires the applicant to state what "Therapeutic Color Equipment" he possesses. The lectures and courses were intended to sell Spectro-Chromes.

The plaintiff was arrested on October 22, 1932, as he was about to begin one of his lectures at Odd Fellows Hall, by the police of Wilmington upon a warrant charging him with the misdemeanor of practicing medicine in the State of Delaware without a license. He was held for the Court of General Sessions of New Castle County and was indicted by the Grand Jury at the November Term of that court on the charge of unlawfully engaging in the practice of the profession of medicine without a license. The plaintiff appeared pro se and moved to quash the indictment. The motion was granted for reasons which do not appear in the record before this court. The plaintiff was thereupon rearrested upon another warrant, was again held for the Court of General Sessions, was again indicted by the Grand Jury of that court at the March Term, 1933, in an indictment containing four counts. The first and third counts were stricken out by the court with the consent of the Attorney General and the prosecution of the complaint was proceeded with upon the second and fourth counts. The second count charged that the plaintiff did "* * * unlawfully engage in the practice of medicine without having obtained a proper license therefor from the Clerk of the Peace of New Castle County, according to law, in that he, * * * then and there, and without having obtained a license as aforesaid, did recommend the use of an appliance for the cure, relief or palliation of ailment or disease of mind or body with the intention of receiving therefor, either directly or indirectly, money or some other form of compensation, in violation of the laws of The State of Delaware." The fourth count charges that the plaintiff did, "* * * unlawfully engage in the practice of medicine without having obtained a proper license therefor * * * in that he * * * did use in connection with his name the letters M.D. implying or desig-

nating him as a practicioner of medicine, in violation of the laws of The State of Delaware." The charges were based upon the provisions of Section 17, Ch. 40, 20 Delaware Laws, embodied in Section 854 of the Revised Code of 1915, Section 935 of the Revised Code of 1935.

Ghadiali was found guilty upon both counts and was sentenced to pay a fine of $250, and thereafter appealed. The judgment of conviction was affirmed by the Supreme Court of Delaware in an unreported opinion.[1] The charge of the Judge of the Court of General Sessions appears in State v. Ghadiali, 1933, 6 W.W.Harr., Del., 308, 175 A. 315. It appears from the bill of exceptions filed by the plaintiff in the Supreme Court of Delaware that the evidence offered in the Court of General Sessions was substantially similar to that offered in the case at bar. The plaintiff testified in the instant case concerning his prosecution by the Delaware authorities and stated that it was his intention, if he could procure an injunction from this court restraining them, to pursue substantially the same course of conduct which had caused his arrests and conviction. The Attorney General of Delaware stated at the bar of this court that if the plaintiff did this, his indictment and trial would follow.

The plaintiff claims the protection of the Constitution of the United States. He has not pointed out any particular Article of the Constitution upon which he relies, aside from the provisions of Section 8, Article I.[2] I conclude that he bases his case in chief upon the provisions of the Fourteenth Amendment and the right to freedom of speech inhering in that Amendment. He attacks the Delaware statute as unconstitutional asserting in effect that he has the right to say what he pleases. He contends, however, that what he has done and what he intends to do in the State of Delaware does not constitute practicing medicine.

■■ In denying the defendants' motion to dismiss the complaint, Judge Nields decided that the complaint stated a cause of action under Section 1 of the Civil Rights Act of April 20, 1871, 17 Stat. 13, 8 U.S. C.A. § 43 note. See Ghadiali v. Delaware State Medical Soc., D.C., 28 F.Supp. 841. This section provides, "That any person who, under color of any law, statute, * * * of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, * * * be liable to the party injured in any action at law, suit in equity * * *." The right of freedom of speech has long been held to be secured by the due process clause of the Fourteenth Amendment to the Constitution. See the recent opinion of the Circuit Court of Appeals for this Circuit in Douglas v. City of Jeannette, 3 Cir., 130 F.2d 652 and the cases cited therein. This court derives its jurisdiction in the case at bar from the Civil Rights Act, 8 U.S.C.A. § 43 and from Section 24(14) of the Judicial Code, 28 U.S. C.A. § 41(14). The constitutional right alleged to be infringed is one of personal liberty. Hence this court may entertain the proceeding without proof that the amount in controversy exceeds $3,000. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

Section 266 of the Judicial Code, 28 U.S. C.A. § 380, provides in part that "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, * * * shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, * * *. The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court; * * *."

■ The Supreme Court has held that Section 266 of the Judicial Code does not require a three-judge court upon the final hearing of a cause except when a motion

---

[1] A writ of certiorari was denied by the Supreme Court of the United States. Ghadiali v. Delaware, 292 U.S. 653, 54 S.Ct. 864, 78 L.Ed. 1502.

[2] "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries".

This constitutional ground as a basis for the plaintiff's complaint does not require discussion.

for a preliminary injunction or restraining order has been made and pressed. Smith v. Wilson, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699; In re Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036. The amended complaint prays only for a permanent injunction.[3] Consequently a three-judge court is not required. I shall proceed, therefore, to consider the plaintiff's case.

■ The rights which the Constitution gives are not absolute and the right of freedom of speech must be so governed as to insure orderly and healthful living. Jones v. Opelika, 316 U.S. 584, 593, 62 S.Ct. 1231, 141 A.L.R. 514. The police power of a state is reserved explicitly to the state by the Tenth Amendment. The health of citizens of a state is a proper subject for the exercise of that power. A state may license the practice of medicine within its borders in aid of public health. Section 2, Chapter 139, 24 Laws of Delaware (Section 847, Rev.Code of 1915; Section 926, Rev.Code of 1935) prohibits the practice of medicine without a license. Section 15, Chapter 40, 20 Laws of Delaware, Section 848, Rev.Code of 1915; Section 929, Rev. Code of 1935, provides for the issuance of a license. The plaintiff has not applied for or received a certificate provided for in Chapter 58, 33 Laws of Delaware, Sections 924 and 925, Rev.Code of 1935. Without such a certificate a license to practice medicine would not be issued to him. See State v. Layton, 8 W.W.Harr. 556, 194 A. 886. A state may define what constitutes the practice of medicine. A Delaware statute supplies a definition of what will constitute the practice of medicine in Delaware. That definition is contained in Section 3, Chapter 139, 24 Laws of Delaware, was embodied in Section 849, Code of 1915, and now constitutes Section 930 of the Revised Code of 1935. The Delaware statutes sub judice are reasonable and present no novel or sub-

stantial questions of constitutionality.[4] See Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623.

■ Has the State of Delaware applied the statute arbitrarily to the plaintiff? He is not a medical doctor or a surgeon. He claims that he does not hold himself out as a physician. He contends that he does not diagnose illnesses, cure sickness or treat ill persons, that he merely sells his patented appliance, the Spectro-Chrome and therefore is not engaged in practicing medicine. He claims, none the less, as I have stated, that the Spectro-Chrome can "tonate" the "imbalance" of the body; that is to say, in medical phraseology, that the Spectro-Chrome applied in accordance with his teachings will cure disease. Thus, although the plaintiff claims to be a mere purveyor of machines, he in effect prescribes methods of treatment for disease. It is immaterial that he disdains the conventional words, "disease" and "cure", and that he disavows the profession of a doctor though making use of the letters "M.D. (Honorary)" after his name. He offers Spectro-Chrome-Metry as a substitute for medicine for the cure of disease. Since he was not licensed by the State of Delaware he was acting in violation of the statute prohibiting the practice of medicine without a license and his prosecution and conviction did not deprive him of his right of freedom of speech without due process of law.

■ Upon the witness stand in the case at bar the plaintiff testified that if he were relieved of the threat of future criminal prosecution he intended to proceed in Delaware as heretofore, except in two particulars. He stated that he would not make use of the letters "M.D." after his name or refer to himself as a doctor. He testified also that he no longer sold Spectro-Chromes; that he would pursue in the State

---

[3] The original complaint prayed for an injunction pendente lite. This prayer was not included in the amended complaint and therefore must be deemed to have been abandoned. As a matter of fact it would be preposterous to apply for a restraining order or for an injunction pendente lite in view of the fact that several years have elapsed between the time of the filing of the amended bill of complaint and the trial of the cause.

[4] A portion of Section 3, Chapter 139, 24 Laws of Delaware is inartistically phrased. The part referred to states:

"It shall also be regarded as practicing medicine within the meaning of this Chapter if anyone shall use in connection with his or her name, the words or letters, Dr., Doctor, Professor, M.D., M.B. or Healer, or any other title, word, letter or other designation which may imply or designate him or her as a practitioner of medicine, or surgery, in any of its branches; * * *."

These words read against their context must be construed as applicable only to one who, within the State of Delaware, prescribes or recommends medicine or an appliance for the cure or palliation of disease.

794

of Delaware the same course as he followed in other states of the United States. This consists of charging each of his students $90 for his lectures. Of this sum the plaintiff concededly receives $10 as his own. He then "gives" each student a Spectro-Chrome and the three volumes of the Spectro-Chrome-Metry Encyclopaedia. If he were permitted to pursue this course in the State of Delaware, he would still be practicing medicine within the purview of the statute and properly could be subjected to criminal prosecution.

I find the statute to be constitutional. Its application to the plaintiff was lawful.

What has been said renders it unnecessary to discuss the application of Section 265 of the Judicial Code, 28 U.S.C.A. § 379, to the circumstances of the case at bar or the ruling of the Supreme Court in Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967.

The amended complaint will be dismissed with costs against the plaintiff.

Findings of fact and conclusions of law are filed with this opinion in accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

A decree may be submitted in accordance with this opinion.