## LYNCH et al. v. CITY OF MUSKOGEE et al.

### No. 540.

District Court, E. D. Oklahoma.

Jan. 31, 1942.

John M. Lynch in pro per.

C. E. Castle, of Wagoner, Okl., Hayden Covington, of Brooklyn, N. Y., and I. O. Correll, of Atoka, Okl., for plaintiffs.

C. A. Ambrister, City Atty., of Muskogee, Okl., for defendants.

RICE, District Judge.

The corporate plaintiff, the Watchtower Bible and Tract Society, Incorporated, a New York corporation, is a resident of the State of New York. The individual plaintiffs are residents of the State of Oklahoma. The individual plaintiffs are duly authorized

representatives of the corporate plaintiff and is known as one of Jehovah's witnesses. The individual plaintiffs act under the direction of the corporate plaintiff and engage in preaching the gospel of almighty God under Jesus Christ, and in the distribution of certain literature published by the corporate plaintiff in the City of Muskogee, a municipal corporation in Muskogee County, State of Oklahoma. The defendant, Roger Tucker, is the City Manager of said City of Muskogee; the defendant Cain Burnett is the Chief of Police of the City of Muskogee, Oklahoma. Both the City Manager and the Chief of Police are residents of the State of Oklahoma. Paragraph eight of the complaint filed herein sets forth in detail the beliefs of each of the individual plaintiffs as one of Jehovah's witnesses and what each conceives to be his duties as a witness of Jehovah. The evidence given in great length establishes the allegations contained in this paragraph of the complaint.

Prior to the tenth day of April, 1941, the individual plaintiffs were offering for sale and distribution upon the streets of the City of Muskogee the literature furnished to them by and published by the corporate plaintiff. On the tenth day of April, 1941, the City of Muskogee acting by its proper officers passed the following ordinance:

"Ordinance 1533

"An ordinance prohibiting the use of language calculated to cause breach of peace; prohibiting the display of signs, emblems, flags, or device calculated to cause a breach of the peace prohibiting blasphemy; providing a penalty for the violation hereof; providing that if any portion shall be held invalid the same shall not affect the remaining hereof; and declaring an emergency.

"Be it ordained by the council of the City of Muskogee, Oklahoma.

"Section 1. It shall be unlawful and an offense for any person, firm or corporation, within the said City, to willfully use, utter, publish, circulate or distribute any profane, violent, abusive or insulting language, in its common acceptance, is calculated to cause a breach of the peace or an assault.

"Section 2. It shall be unlawful and an offense for any person, firm or corporation, within the City, to display any sign, emblem, flag, or device, which in its common acceptance, is insulting, profane, or abusive to the citizens of said City, and which is calculated, or where the natural consequence is, to cause a breach of the peace or an assault.

"Section 3. It shall be unlawful and an offense for any person, firm or corporation, within the city, to wantonly utter, circulate or distribute any words or language casting contumelious reproach or profane ridicule of God, Jesus Christ, the Holy Ghost, the Holy Scripture, or the Christian or any other religion calculated, or where the natural consequence is, to cause a breach of the peace or an assault.

"Section 4. Any person, firm or corporation, who violates any of the provisions of this ordinance shall upon conviction thereof be punished by fine not to exceed $19.95.

"Section 5. If any part of this ordinance, or any rule or regulation herein shall be held to be invalid by a court of competent jurisdiction, such invalidity shall not affect the validity of any other part or section or other rule, regulation or requirement herein.

"Section 6. (Emergency) Whereas, it being immediately necessary for the preservation of the peace, health, and safety of Muskogee, and the inhabitants thereof, that the provision of this ordinance be put into full force from and after its passage, as provided for by law."

For some four or five weeks prior to the passage of this ordinance by the City, on each Saturday afternoon there had occurred upon the streets of Muskogee what the plaintiffs refer to as fights and what the defendants' witnesses refer to as riots, in which certain individual plaintiffs were involved on the one side and citizens of the City of Muskogee on the other. The only evidence as to the cause of these fights or riots was given by the individual plaintiffs and their testimony is to the effect that while they were upon the streets of the City of Muskogee peacefully and courteously offering their literature for sale and distribution to the public they were, without excuse or provocation, attacked by certain individual defendants, some of whom they identify as members of a certain organization known as the Americanism Club. The individual plaintiffs admitted engaging in these fights, but stated that they were fighting only in self-defense. The evidence fails to disclose that these fights were begun by any person to whom the plaintiffs offered their literature for sale.

The organization known as the Americanism Club, particularly certain members thereof, after the disturbances on the streets of Muskogee, which disturbances I think from the evidence were caused by certain members of said organization, interested themselves in the passage of a city ordinance and as a result of their activities a copy of the ordinance which was passed was procured from Oklahoma City where a similar ordinance was in force and effect and was subsequently introduced by some member of the city counsel and passed.

From April 12, 1941, to November 4, 1941, two hundred four different arrests were made by the police force of the City of Muskogee. Involved in these arrests were forty different individuals, some of whom were arrested as many as twenty three times; others from twelve to nineteen times. In each instance the individual was charged with the violation of ordinance No. 1553. The complaint, omitting the caption, in one instance, which is typical of all, is as follows:

"I, Hinson & Chambers, do solemnly swear that the above named persons within the corporate limits of Muskogee did on the 12 day of April, 1941, violate Section —— of ordinance No. —— by ordinance No. 1533, and pray that said defendant be arrested and brought before Elbert Hinds, Police Judge, to be dealt with according to law. Hinson & Chambers. Sworn and subscribed before me this 14 day of April, 1941. Elbert Hinds, Police Judge."

Upon arrest the individual defendants were taken before the Police Judge and required to post a twenty dollar cash bond. Upon trial except for ten cases that were dismissed they were convicted and fined from ten dollars to nineteen dollars and ninety-five cents each. Upon each conviction an appeal was taken to the County Court of Muskogee County, Oklahoma. The appeals were at the time of this trial and are at this time pending in the County Court. No trials have been had in the County Court and no demand for trial has been made by any of the individual defendants.

The evidence shows that after the passage of this ordinance a call would be made to the Chief of Police of the City of Muskogee from some one not disclosed by the evidence, advising that at a certain point in the City of Muskogee a certain member or members of the Jehovah's witnesses were upon the streets distributing literature. A call would be sent out from the police station to the police officers on duty within the City of Muskogee advising the location of the person to be arrested, and directing that the individual distributing the literature be arrested. Thereupon the police officer receiving the call would proceed to the point designated and arrest whatever member of the Jehovah's witnesses was there, take him or her to the Police Judge and file the complaint. Upon trial of the individual charged the police officer would appear and testify. His testimony was to the effect that he received the call to go and make the arrest; that he found the defendant on the streets with literature for sale, and that he made the arrest. No proof other than the fact that the defendant was upon the streets of Muskogee distributing Jehovah witness literature was introduced at the trial of these defendants. These arrests, trials and convictions continued up to the time of trial.

Upon the trial of this cause it developed from the plaintiffs' own witnesses that it is contrary to the beliefs of a witness of Jehovah to salute the flag of the United States. It develops that they believe that all religion is a snare and a racket, that they are subject only to the will of God, that when the dictates or laws of any Government conflict with what they term to be the will of God, it is their duty to obey the will of God and disobey the laws of the land. These people claim to find authority for all their beliefs in the Bible and although they make no claims to any sort of religion, they invoke the constitutional guarantee of religious freedom. Many of the persons engaged in the distribution of the literature published by the corporate plaintiff are in my opinion sincere. With their beliefs and practices the court personally thoroughly disagrees. They apparently thoroughly disagree with what I have always considered to be fundamental religious and patriotic beliefs. The disagreement is mutual. Instead of preaching and following Jehovah as plaintiffs contend they are doing, it is my personal belief that they are spreading propaganda and following the leaders of their organization, to-wit, the managers of the corporate plaintiff. However, I do not consider that the correctness of their beliefs is at issue. No one questions their right to believe as they do; it is their activities that are questioned. The question is whether

or not their activities go beyond their constitutional guaranteed rights, or putting it another way, the question is whether or not defendants are so enforcing the ordinance in question in such a way as to deprive plaintiffs of rights guaranteed to them under the Constitution.

### Conclusions of Law.

I. This court has jurisdiction to hear and determine this cause, both as to the individual plaintiffs, 28 U.S.C.A. § 41 (14) and as to the corporate plaintiff, 28 U.S.C.A. 41(1); Oney v. Oklahoma City et al., 10 Cir., 120 F.2d 861.

II. The ordinance in question is not invalid on its face, Oney v. Oklahoma City et al., supra.

III. The construction and application of the ordinance as made by the police authorities of the City of Muskogee is such as to deprive the plaintiffs of their rights under the Fourteenth Amendment of the Constitution of the United States. In effect the ordinance has been construed in such a way as to prohibit the plaintiffs or any members of their society from peaceably disseminating or offering for sale their literature. It is not the ordinance itself that is invalid. It is the construction and method of enforcement thereof that is invalid, and the due process clause of the Constitution secures against deprivation of liberty occasioned either by express terms of an ordinance or by its improper execution through duly constituted agents.

IV. Nothing in this finding of fact and conclusions of law nor in the judgment to be entered based hereon is intended to nor shall it be construed in any wise to affect the prosecution of the cases now pending on appeal in the County Court of Muskogee County, Oklahoma.

V. It is not the intention of this court in this cause to prevent or hamper the proper enforcement of said ordinance but to prevent the enforcement thereof in such a way as shall prevent the plaintiffs and other members of their society from peaceably offering their literature for sale upon the streets of the City of Muskogee, and the fact that other people who oppose the offering of this literature upon the streets of the City of Muskogee may cause a disturbance with some member of the plaintiffs' society shall not be construed as a breach of the peace by a member of the society.

VI. A continued enforcement of this ordinance as it was enforced prior to the time of trial would cause plaintiffs an irreparable injury. An injunction should issue enjoining the defendants from construing said ordinance and enforcing it in such a way as will prevent the plaintiffs from appearing upon the streets and in a peaceable and courteous manner offering their literature for sale or distribution.

Attorneys for the plaintiff are directed to prepare a decree in accordance with the above findings of fact and conclusions of law, serve the same upon the attorney for the defendant, and present to the court for signing and entry at Muskogee on February 17, 1942.