**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TOBY HARMON; SHANE DODSON;
TAMMI DODSON,

     Plaintiffs - Appellants,

v.

CITY OF NORMAN, OKLAHOMA; JEFF
ROBERTSON, in his individual capacity
acting as a police officer for the City of
Norman, Oklahoma; DOES 1-5,

     Defendants - Appellees.

No. 18-6187

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CV-00688-HE)**
_____

David Markese, Chuluota, Florida (Frederick H. Nelson, American Liberties Institute,
Orlando, Florida, on the brief), for Plaintiffs – Appellants.

Rickey J. Knighton II (Kristina L. Bell, with him on the brief), Assistant City Attorneys,
Norman, Oklahoma, for Defendants – Appellees.
_____

Before **LUCERO**, **EBEL**, and **HARTZ**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this 42 U.S.C. § 1983 action, Plaintiffs—three individuals who protest against abortion—challenge Norman, Oklahoma's disturbing-the-peace ordinance, on its face and as the City has applied it to them. The specific issue presented in this interlocutory appeal is whether the district court abused its discretion in refusing to enjoin the City from enforcing the ordinance against Plaintiffs during this litigation. Having jurisdiction under 28 U.S.C. § 1292(a)(1), we conclude that the district court did not abuse its discretion in denying Plaintiffs' request for a preliminary injunction because they failed to show that they are substantially likely to succeed on the merits of their claims. We, therefore, AFFIRM.

## I. BACKGROUND[1]

The City's disturbing-the-peace ordinance, § 15-503, provides:

No person shall disturb the peace of another by:

> (1) Violent, obstreperous, or improper conduct or carriage which in its common acceptance is calculated, or where the natural consequence is to cause an assault, battery or other breach of the peace;

> (2) Unseemly, obscene, offensive, insulting or abusive language which in its common acceptance is calculated, or where the natural consequence is, to cause an assault, battery, or other breach of the peace;

> (3) Playing or creating loud or unusual sounds;

---

[1] The evidence before the district court when it ruled on Plaintiffs' motion for a preliminary injunction included the factual allegations in Plaintiffs' verified complaint, three municipal citations the City issued Plaintiff Toby Harmon and one issued to another person, Harmon's Facebook message to an assistant city attorney, and several videos of Plaintiffs' protests.

(4) Circulating literature which casts ridicule upon any deity or religion, which in its common acceptance is calculated to cause an assault, battery, or other breach of the peace;

(5) Displaying any sign, emblem, badge, flag or other device, which in its common acceptance is calculated, or where the natural consequence is, to cause an assault, battery, or other breach of the peace.

(Aplt. App. 81.)

"The plaintiffs are individuals who, on religious and other grounds, are opposed to abortion." (Id. 103.) "For many years, Plaintiffs and their associates have attempted to share [their] message with signs, tracts and speaking to the general public in the Public Spaces of the City." (Id. 12 ¶ 49.) This includes "protest[ing] outside a Norman facility where a doctor performs abortions." (Id. 104.) During these protests, "Plaintiffs have occupied positions on public streets or sidewalks a relatively short distance (what appears to be 20-25 yards) from the entrances to the facility. From those vantage points, they verbally engage with persons entering the clinic, trying to persuade them to reject abortions." (Id.)

"Norman [police] officers have cited plaintiffs, or threatened to cite plaintiffs, for violation of the [City's disturbing-the-peace] ordinance when their protests were conveyed by loud speaker or other means of amplification which made their shouted comments audible inside the clinic." (Id.) The citation a Norman police officer issued Harmon in March 2016, for example, charged that Harmon was "using a PA system and disrupting the business." (Id. 83.) The City eventually dismissed that citation "in the interest of justice." (Id. 85.) In October 2016, Defendant Robertson,

3

a Norman police officer, threatened to cite Harmon if he used a "plastic hand-held cone" outside the clinic to amplify his voice. (Id. 13 ¶ 61.)

There is also evidence that the City has cited people for disturbing the peace under this ordinance based on loud yelling or screaming. For instance, in 2017, officers cited an individual (Katherine Robinson) who was outside the clinic for disturbing the peace when her screaming and yelling was heard inside the clinic. The City did not prosecute this citation, either. "There is also evidence that, on one occasion, officers cited plaintiff Harmon for violation of the ordinance based on him yelling at a person leaving the clinic and following them onto adjacent property." (Id. 104.)

Plaintiffs plan to continue their protests, but fear that, in doing so, they will be cited or arrested, and fined under the ordinance for disturbing the peace. Plaintiffs, therefore, initiated this litigation under 42 U.S.C. § 1983 against the City and one of its police officers, Jeff Robertson, as well as other unidentified John Doe officers, alleging Norman's disturbing-the-peace ordinance, on its face and as applied to Plaintiffs, violates their First Amendment rights to free speech and free exercise of religion, as well as their Fourteenth Amendment right to due process. As relief, Plaintiffs seek declaratory and injunctive relief, and damages.

Soon after filing this lawsuit, Plaintiffs moved for a preliminary injunction, asking the district court to enjoin the City from enforcing its disturbing-the-peace ordinance against them during the course of this litigation. After conducting a hearing, the district court denied that request, ruling Plaintiffs had failed to establish

4

a substantial likelihood that they would prevail on the merits of their claims. Plaintiffs challenge that decision in this interlocutory appeal. See 28 U.S.C. § 1292(a)(1) (giving courts of appeal jurisdiction over interlocutory appeals from district court orders denying an injunction).

## II. STANDARD OF REVIEW

We review the district court's decision to deny Plaintiffs a preliminary injunction for an abuse of discretion. See Mrs. Field's Franchising, LLC v. MFGPC, 941 F.3d 1221, 1232 (10th Cir. 2019).

> "A district court's decision crosses the abuse-of-discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record. As we review a district court's decision to grant or deny a preliminary injunction, we thus examine the court's factual findings for clear error and its legal conclusions de novo."

Id. at 1232–33 (quoting Free the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792, 796-97 (10th Cir. 2019)).

A preliminary injunction is "an extraordinary remedy never awarded as of right," Benisek v. Lamone, 138 S. Ct. 1942, 1943 (2018) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)); it is "the exception rather than the rule," United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc., 883 F.2d 886, 888 (10th Cir. 1989). In order to obtain a preliminary injunction, Plaintiffs must show that (1) they are substantially likely to succeed on the merits of their claims, (2) they will suffer irreparable harm if the injunction is denied, (3) their threatened injury without the injunction outweighs any

5

harm to the party opposing the injunction, and (4) the injunction, if issued, is not adverse to the public interest. See Mrs. Fields Franchising, 941 F.3d at 1232.

Addressing only the first requirement, the district court denied Plaintiffs a preliminary injunction, concluding they had not established a substantial likelihood that they will prevail on the merits of their claims. See generally Verlo v. Martinez, 820 F.3d 1113, 1126 (10th Cir. 2016) (noting that, "[i]n the First Amendment context, 'the likelihood of success on the merits will often be the determinative factor' because of the seminal importance of the interests at stake" (quoting Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc), aff'd, 573 U.S. 682 (2014))). This is the issue we consider on appeal. In order to show a substantial likelihood of success on the merits, Plaintiffs had "to make a prima facie case showing a reasonable probability that [they] will ultimately be entitled to the relief sought." Automated Mktg. Sys., Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972).

### III. DISCUSSION

**A. Plaintiffs' as-applied First Amendment claim**

Plaintiffs' primary claim is that Defendants violated the First Amendment by applying § 15-503(3)—prohibiting "disturb[ing] the peace of another by . . . [p]laying or creating loud or unusual sounds"—to them.[2] In considering Plaintiffs' motion for a preliminary injunction, the district court reasonably addressed this as-applied claim

---

[2] Plaintiffs assert Defendants violated Plaintiffs' rights to both free speech and free exercise of religion, but they do not make separate arguments in support of those asserted First Amendment violations. We, therefore, address them together as well.

6

first.  See Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 484-85 (1989) (indicating it is usually better to address an as-applied challenge before a facial overbreadth argument).

**1. Parties' burdens in response to Plaintiffs' motion for a preliminary injunction**

As an initial matter, we address the parties' burdens pertaining to this as-applied First Amendment challenge to a time, place and manner restriction.  While it is Plaintiffs' burden, as the movants, to make a showing sufficient to justify a preliminary injunction, "the burdens at the preliminary injunction stage track the burdens at trial."  Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006) (citing Ashcroft v. Am. Civ. Liberties Union, 542 U.S. 656, 665-66 (2004)).  Here, then, Plaintiffs had the initial burden of showing that the First Amendment applies to their conduct.  See Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294 n.5 (1984); see also Rodney A. Smolla, 1 Smolla & Nimmer on Free Speech § 8:49 (updated Oct. 2020).  The City concedes that it does.

The burden then shifted to the City, as the proponent of the challenged regulation, to establish the validity of applying § 15-503(3) to Plaintiffs.  See Gonzales, 546 U.S. at 429-30 (discussing Ashcroft, 542 U.S. at 665-66); see also Evans v. Sandy City, 944 F.3d 847, 851-52, 854, 856 (10th Cir. 2019) (stating City had burden to justify content-neutral time, place and manner restriction), cert. denied, 2020 WL 5882223 (U.S. Oct. 5, 2020); iMatter Utah v. Njord, 774 F.3d 1258, 1263 (10th Cir. 2014) (same, addressing as-applied challenge); 1 Smolla & Nimmer on

Free Speech § 8:49. Thus, in the context of a motion for a preliminary injunction, when, in response to that motion, the proponent of a challenged ordinance fails to make a sufficient showing that its regulation is constitutional, the movants will have shown a substantial likelihood that they will prevail on the merits of their claim challenging the validity of that regulation. See Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1231 (10th Cir. 2005).

**2. The City has sufficiently shown that its application of § 15-503(3) to Plaintiffs did not violate the First Amendment**

The district court began its analysis of the likelihood that Plaintiffs will prevail on their as-applied challenge to § 15-503(3) by acknowledging the City's concessions both that Plaintiffs' activities at issue here are protected by the First Amendment and that the public roadway and sidewalk in front of the clinic where Plaintiffs protested are traditional public forums. See Minn. Voters All. v. Mansky, 138 S. Ct. 1876, 1885 (2018) (recognizing "parks, streets, sidewalks, and the like" are traditional public forums). "[E]ven in a public forum," however,

> the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark, 468 U.S. at 293).

**a. Section 15-503(3) is content-neutral**

Applying Ward, the district court accurately deemed § 15-503(3) to be content-neutral. Whether a legislative enactment is content-neutral or instead

8

content-based turns on "the government's purpose." Ward, 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id.

Section 15-503(3)'s language is clearly content-neutral, prohibiting disturbing another's peace by making "loud or unusual sounds," without reference to the content of the noise. See Reed v. Town of Gilbert, 576 U.S. 155, 163-64 (2015) (looking to language of challenged code provision to determine whether it was content neutral); see also McCullen v. Coakley, 573 U.S. 464, 479 (2014) (noting statute at issue in that case "does not draw content-based distinctions on its face").

A neutrally written ordinance like § 15-503 might still be deemed content-based if the City cannot justify it without referencing the content of the speech involved, or if the City adopted the challenged ordinance because the City disagreed with a message being conveyed. See Reed, 576 U.S. at 164 (citing Ward, 491 U.S. at 791). But there is no suggestion either is the case here. As the district court noted, "there is nothing in the parties' . . . submissions which suggests the City is enforcing the ordinance against plaintiffs based on their particular religious or other beliefs." (Aplt. App. 106.)

The Supreme Court has indicated that a legislative enactment also "would not be content neutral if it were concerned with undesirable effects that arise from 'the direct impact of speech on its audience' or '[l]isteners' reactions to speech.'" McCullen, 573 U.S. at 481 (quoting Boos v. Barry, 485 U.S. 312, 321 (1988)). For the first time on

9

appeal, Plaintiffs rely on McCullen to contend that § 15-503(3) is not content-neutral because it addresses loud sounds that disturb the peace of another. Although we need not consider this new argument, see Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin., 843 F.3d 886, 903-04 (10th Cir. 2016), it does not, in any event, further Plaintiffs' request for an injunction. The language of § 15-503(3) addresses the impact Plaintiffs' protests have on listeners because of the volume of the speech, not its content. To the contrary, although Plaintiffs assert that they have protested at the abortion clinic for years, City officials have applied, or threatened to apply, § 15-503(3) to Plaintiffs' protests only when those protests involved amplification of their voices or loud yelling and screaming.

### b. The City has shown § 15-503(3) is narrowly tailored to serve a significant government interest, leaving open ample alternative channels of communication

Section 15-503(3), then, is a content-neutral time, place, and manner regulation that will be valid under the First Amendment if it is "narrowly tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative channels for communication of the information" at issue. Ward, 491 U.S. at 791 (quoting Clark, 468 U.S. at 293). The Supreme Court has recognized that the City's interest here—"protecting its citizens from unwelcome noise"—is a legitimate and "substantial interest." Id. at 796 (quoting Members of City Council of City of L.A. v Taxpayers for Vincent, 466 U.S. 789, 806 (1984)). While "[t]his interest is perhaps at its greatest when government seeks to protect 'the well-being, tranquility, and privacy of the home,' . . . the government may act to protect even such traditional public forums as

10

city streets and parks from excessive noise." Id. (quoting Frisby v. Schultz, 487 U.S. 474, 484 (1988)). "If overamplified loudspeakers assault the citizenry, government may turn them down." Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 773 (1994) (quoting Grayned v. City of Rockford, 408 U.S. 104, 116 (1972)). The district court further noted that the City's "interest is particularly significant where the noise is directed to or impacts a medical facility." (Aplt. App. 107.)

The district court went on to determine, accurately, that the City has narrowly tailored § 15-503(3) to serve the City's interest in protecting its citizens from unwelcome noise. The narrow-tailoring requirement is met here, under intermediate scrutiny, "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)). That is the case here. The City would be less effective in protecting its citizens from unwanted noise without § 15-503(3)'s prohibition against "loud and unusual sounds" that "disturb the peace of another." See Costello v. City of Burlington, 632 F.3d 41, 44-46 (2d Cir. 2011) (holding municipal code provision prohibiting "loud or unreasonable" noise, defined in part as noise that "disturbs . . . the peace . . . of another," was narrowly tailored to serve the city's "substantial interest in protecting its citizens from unwelcome noise," quoting Ward, 491 U.S. at 796).

Finally, § 15-503(3) leaves open ample alternative channels for Plaintiffs to communicate their message. Plaintiffs can continue to express their beliefs and still comply with § 15-503(3), so long as they reduce the volume by which they express

11

those views.  See Ward, 491 U.S. at 802; see also Costello, 632 F.3d at 46-47 (2d Cir.).  The fact that the City's "limitations on volume may reduce to some degree the potential audience for [Plaintiffs'] speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate."  Ward, 491 U.S. at 802.

Because the City has shown that § 15-503(3), as the City applied it to Plaintiffs, is a reasonable time, place, and manner restriction on protected speech, the district court did not abuse its discretion in determining that Plaintiffs failed to establish a substantial likelihood that they will prevail on the merits of their as-applied First Amendment challenge to § 15-503(3).  Plaintiffs' arguments on appeal challenging the district court's analysis are unavailing.  Most of those arguments derive from Plaintiffs' unpersuasive attempt to describe the City's asserted interest to be only that of keeping people inside the abortion clinic from hearing any audible sound whatsoever.  This contention is based in part of Plaintiffs' incorrect assertion that there is no evidence that anyone inside the abortion clinic ever heard Harmon's amplified protests.  But there is such evidence.  The citation the City issued Harmon in March 2016 charged that his use of a "PA system . . . disrupt[ed] the [clinic's] business." (Aplt. App. 83.)  Further, Harmon himself indicated in a message to an assistant city attorney that people informed Harmon that they had heard his amplified voice inside the clinic.  In addition, in August 2017, the City cited Katherine Robinson when people inside the clinic heard her yelling and screaming outside the building.

12

Nor is there any suggestion on the limited record before the district court that the noise complaints from those inside the clinic were because of the content of Plaintiffs' message instead of the volume of those protests. Plaintiffs asserted that they have protested outside the clinic for many years and yet the City has cited Harmon only once under § 15-503(3), when he was amplifying his protests, and threatened to cite him on one other occasion when he intended to amplify his voice.

We conclude, then, that the district court did not abuse its discretion in refusing to enjoin preliminarily the City's application of § 15-503(3) against Plaintiffs because they failed to establish a substantial likelihood that they would prevail on the merits of their as-applied challenge to that section of the ordinance.

**B. Plaintiffs' facial challenges**

Although Plaintiffs' as-applied challenge to the application of § 15-503(3) to their protests was their primary claim, the district court also denied Plaintiffs a preliminary injunction based on their facial challenges to § 15-503 as a whole. Those facial challenges were wide-ranging, conclusory, and unfocused. In light of that, and because "when considering a facial challenge it is necessary to proceed with caution and restraint," Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975), the district court did not abuse its discretion in denying a preliminary injunction on Plaintiffs' facial challenges because the merits of those claims were not yet adequately teed up for the court's resolution. The district court specifically ruled:

> On the present record, the court . . . concludes that plaintiffs' facial challenge to the ordinance does not warrant enjoining its enforcement. Plaintiffs identified several potentially vague or overbroad phrases in the

13

ordinance but, based on the evidence and limited briefing offered to date, the court cannot conclude that the ordinance will necessarily lead to arbitrary enforcement or would prohibit a substantial amount of protected speech. Various issues, including how pertinent language may have been construed or narrowed under Oklahoma law, must be addressed before a determination of facial unconstitutionality is warranted. Without such information, it is premature to conclude that the ordinance is overbroad or vague, given Tenth Circuit precedent, albeit somewhat dated, upholding similar ordinances. See Oney v. Okla. City, 120 F.2d 861, 865 (10th Cir. 1941). The questions of overbreadth and vagueness remains for resolution, but injunctive relief on those grounds is not warranted now.

(Aplt. App. 108.) The district court's ruling was not an abuse its discretion.

As an initial matter, although Plaintiffs can challenge the ordinance on its face, their request for a preliminary injunction enjoining the City from enforcing the ordinance against Plaintiffs on this basis is weakened by the fact that, on the existing record, the City has not applied, or threatened to apply, any provision of the ordinance except § 15-503(3) to Plaintiffs. Because "[t]he primary function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties," Resolution Tr. Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992) (internal quotation marks omitted), Plaintiffs have not shown a need preliminarily to enjoin the City from enforcing the rest of § 15-503's provisions against Plaintiffs.

Even so, the district court considered whether Plaintiffs' facial challenges to the entire ordinance supported a preliminary injunction. The court did not abuse its discretion in determining that Plaintiffs had failed to establish a substantial likelihood they would prevail on the merits of their facial challenges to the ordinance as a

14

whole. Plaintiffs' primary facial arguments before the district court were that

§ 15-503 was impermissibly vague and overbroad.[3]

## 1. Vagueness

Plaintiffs contend that § 15-503 on its face is unconstitutionally vague,

challenging undefined terms included in each of the ordinance's five provisions.

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked."

---

[3] Plaintiffs also may have asserted in the district court a third theory of facial invalidity, that § 15-503, on its face and as a whole, is an unconstitutional time, place and manner restriction that violates the First Amendment. They seem to make that argument more clearly on appeal. Because Plaintiffs, if they did assert this theory in the district court, did so in a jumbled manner, interspersing it throughout their arguments addressing their other facial and as-applied theories, the district court did not abuse its discretion in denying a preliminary injunction on that additional theory of § 15-503's facial invalidity. Relatedly, Plaintiffs argue on appeal that the district court failed to address their facial Fourteenth Amendment due process arguments. But in the section of their complaint addressing their Fourteenth Amendment claims, Plaintiffs only asserted very generally that § 15-503 is impermissibly vague and overbroad, thus infringing Plaintiffs' First Amendment rights. The district court adequately considered those Fourteenth/First Amendment claims.

Grayned, 408 U.S. at 108–09 (footnotes, internal quotation mark omitted) (quoting

Cramp v. Bd. of Pub. Instruction, 368 U.S. 278, 287 (1961), and Baggett v. Bullitt, 377

U.S. 360, 372 (1964)).  Contrary to Plaintiffs' assertion, it is their burden to establish that

the ordinance is unconstitutionally vague.  See, e.g., Roy v. City of Monroe, 950 F.3d

245, 251-52 (5th Cir. 2020); Indep. Inst. v. Buescher, No. 10-cv-00609-PAB-MEH, 2010

WL 3239230, at *9 (D. Colo. Aug. 13, 2010) (unreported); cf. Dias v. City & Cty. of

Denver, 567 F.3d 1169, 1180 (10th Cir. 2009) (stating that a plaintiff seeking

pre-enforcement review of a regulation's vagueness has the burden of proof in a

Fourteenth Amendment challenge for vagueness).

In considering whether an ordinance is vague, a court of course starts with the

ordinance's language.  See Grayned, 408 U.S. at 110.  But a court must also consider

any narrowing construction courts have given the challenged regulation, as well as

"the interpretations the court below has given to analogous statutes, and, perhaps to some

degree, to the interpretation of the statute given by those charged with enforcing it."  Id.

(footnote omitted).  Most relevant to the disturbing-the-peace ordinance at issue here,

the Supreme Court has recognized that if courts narrowly construe similarly worded

regulations to limit their application to unprotected speech, such as "fighting

words"—words "which by their very utterance inflict injury or tend to incite an

immediate breach of the peace," Chaplinsky v. New Hampshire, 315 U.S. 568, 572

(1942)—those statutes will avoid constitutional vagueness problems.  See Gooding v.

Wilson, 405 U.S. 518, 523-28 (1972); see also Plummer v. City of Columbus, 414

U.S. 2, 2-3 (1973) (per curiam).  In addition, consideration may be given to

16

interpretation or application of the statute in question by those charged with enforcing it.  See Grayned, 408 U.S. at 110.  This is why the district court, in a proper exercise of its discretion, was reticent preliminarily to enjoin the enforcement of other parts of § 15-503 for which there was no evidence nor any allegation of any previous enforcement or threatened enforcement against these Plaintiffs and when the parties had not addressed any possible narrowing construction given to the ordinance's language.  In fact, there is no allegation or evidence in this record of the enforcement or threatened enforcement of these other sections of § 15-503 against anyone attempting to exercise their First Amendment rights.  See generally Erznoznik, 422 U.S. at 216 (noting that, "when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program.  In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts . . . and its deterrent effect on legitimate expression is both real and substantial").

Furthermore, as the district court noted, the Tenth Circuit has previously upheld a somewhat similarly drafted ordinance in Oney.  See 120 F.2d at 862 n.5, 865.  The Oklahoma City ordinance at issue in Oney is not a perfect match to Norman's § 15-503.  Nor did the district court here rule that Oney was dispositive of Plaintiffs' facial challenge to § 15-503's language as unconstitutionally vague.  But the district court did not abuse its discretion in ruling only that this Court's decision

17

in Oney further diminished the likelihood that Plaintiffs' facial challenges to § 15-503 would succeed.

### 2. Overbreadth

Plaintiffs also contend that § 15-503 on its face is overbroad.

> A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct. . . . Because overbroad laws, like vague ones, deter privileged activity, [the Supreme Court's] cases firmly establish appellant's standing to raise an overbreadth challenge. The crucial question, then, is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.

Grayned, 408 U.S. at 114–15 (footnotes omitted); see also Fox, 492 U.S. at 484 (stating that the overbreadth doctrine "enable[s] persons who are themselves unharmed by the defect in a statute nevertheless 'to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court'" (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973))).

However, where, as here, the challenged ordinance addresses "conduct and not merely speech," "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick, 413 U.S. at 615; see also 1 Smolla & Nimmer on Freedom of Speech, § 6:5. Establishing substantial overbreadth, then, "requires a comparison between the legitimate and illegitimate applications of the law." 1 Smolla & Nimmer on Freedom of Speech, § 6:6. To succeed on their overbreadth challenge "[i]t is [Plaintiffs'] burden to show, 'from the text of [the [ordinance] and from actual fact,' that substantial overbreadth exists." United States v.

18

Brune, 767 F.3d 1009, 1020 (10th Cir. 2014) (quoting Virginia v. Hicks, 539 U.S. 113, 122 (2003) (internal quotation marks omitted)).

Plaintiffs have not met their burden; they did not specifically address, in any substance, how the ordinance is overbroad. Nor did they attempt to compare, in fact, § 15-503's permissible and impermissible applications. For these reasons, the district court did not abuse its discretion in denying Plaintiffs a preliminary injunction, because they failed to establish a substantial likelihood that they would prevail on the merits of their facial overbreadth claim.

Moreover, like vagueness, a statute's overbreadth can be cured by giving the statutory language a limiting construction or it can be cured when "statutes regulating conduct in the shadow of the First Amendment . . . do[] so in a neutral, noncensorial manner." Broadrick, 413 U.S. at 614; see also 1 Smolla & Nimmer on Freedom of Speech, § 6:8. Again, the district court did not abuse its discretion in declining to enjoin the City's enforcement of § 15-503 against Plaintiffs until the parties addressed how courts have construed § 15-503 or how the City has enforced it. The district court's decision wisely heeded the Supreme Court's longstanding admonition "that invalidation for [First Amendment] overbreadth is 'strong medicine' that is not to be 'casually employed.'" United States v. Sineneng-Smith, 140 S. Ct. 1575, 1581 (2020) (internal quotation marks omitted) (quoting United States v. Williams, 553 U.S. 285, 293 (2008)); see also Broadrick, 413 U.S. at 613 (noting that, because overbreadth is "strong medicine" "[i]t has been employed by the Court sparingly and only as a last resort"). This caution is particularly applicable in the context of a preliminary injunction. The

19

district court, therefore, did not abuse its discretion when it ruled that "Plaintiffs identified several potentially vague or overbroad phrases in the ordinance but, based on the evidence and limited briefing offered to date, the court cannot conclude that the ordinance will necessarily lead to arbitrary enforcement or would prohibit a substantial amount of protected speech."  (Aplt. App. 108.)

## IV. CONCLUSION

The district court did not abuse its discretion when it declined preliminarily to enjoin the City's enforcement of that ordinance preliminarily against Plaintiffs during this litigation.  We AFFIRM.